Howard L. WHALEN, George Elliott and
Edward Eugene Perkins, Plaintiffs,

v.

The CITY OF ATLANTA, et
al., Defendants.

Civ. A. Nos. C80–1508A, C80–1583A.

United States District Court,
N. D. Georgia,
Atlanta Division.

June 3, 1982.

Edward T. M. Garland and Joseph F. Page, Garland, Nuckolls, Kadish, Martin & Catts, Atlanta, Ga., for plaintiffs.

Marva Jones Brooks, W. Roy Mays, III and Flora B. Devine, Atlanta, Ga., for defendants.

## ORDER

ROBERT H. HALL, District Judge.

These consolidated cases are civil rights actions brought by police lieutenants seeking damages against defendants, city officials, who are alleged to have unconstitutionally demoted plaintiffs from their former positions as police captains. The actions are brought under 42 U.S.C. §§ 1983 and 1988.

The background of the litigation is that in 1975, plaintiffs Perkins, Elliott and Whalen were Atlanta police officers. On May 7, 1975, the Mayor and City Council of Atlanta adopted an ordinance governing certain promotions within the police department. Ordinance, City of Atlanta, § 11–2041 et seq. (The ordinance was merely a current reenactment of provisions dating back to 1965.) Under the ordinance, examination standards were established for promotion, together with a requirement that a minimum score of seventy (70%) per cent should be required to place an officer on the eligibility list for promotion to captain. In September, 1975, all three plaintiffs took the examination, and all three received scores below seventy (70%) percent. Plaintiff Perkins achieved a total score of 69.4 percent. Plaintiff Whalen achieved a total score of 69.4 (or perhaps 69.2) percent. The Commissioner of Public Safety at the time, A. Reginald Eaves, promoted plaintiffs Whalen and Perkins to captain despite the fact that their score was below seventy (70%) percent. Plaintiff Elliott received a score of 70.4 percent, but only because Commissioner Eaves awarded him an additional six points for an injury which allegedly prevented his taking the physical fitness portion of the captain's examination. Initially Elliott had scored 64.4 percent, but he appealed this score submitting the following statement: "On the day before I was to take the test, April 7,[1] 1975, I was running and playing basketball, getting into shape for my test, when I broke my finger. The doctor had to put my finger in a splint and stated that I could not take the test as pull-ups and push-ups would cause me to have a stiff finger for the rest of my life." The promotion system review board, apparently on the basis of that letter, recommended to the Commissioner that he award six points for a "line of duty injury" to Elliott. The Commissioner did so, thus raising Elliott's overall score to 70.4 percent.

After their promotions to captain, plaintiffs performed in those jobs for approximately three years. On September 12, 1978, a new Commissioner of Public Safety, Lee P. Brown, "demoted" all three plaintiffs from the position of captain to the position of lieutenant, after learning, in the course of an investigation of discrepancies in the 1975 promotion examination scores, that they had initially scored below 70 percent. It is these "demotions" which are the subject of this lawsuit.

These suits were filed some two years later. Plaintiffs allege that their demotions deprived them of procedural due process and equal protection, and further stigmatized them. They seek back wages, compensatory and punitive damages including

---

1. The court finds in the record no explanation for the discrepancy that the "examination" for a promotion occurred in September 1975, but apparently plaintiff relied upon a physical exam which occurred in April, 1975, and for which he was incapacitated. Presumably, a broken finger would have healed in five months, enabling Elliott to take a physical examination in September. No explanation is offered for why he did not do this.

damages for injury to reputation, and attorney fees. Answering the suit, defendants assert that the "demotions" were not improper because plaintiffs had no valid claim to the position of captain, their promotions have been void *ab initio*. Defendants further argue that plaintiffs failed to utilize administrative remedies—grievance procedures—open to them.

By order filed March 10, 1981, this court denied defendants' motion for summary judgment because several material facts appeared then to be in dispute. However, the court noted in that order its belief that the case was susceptible to resolution by summary judgment, and has subsequently attempted to clarify the issues. On the basis of further filings in the case, the court has now determined that defendants are entitled to summary judgment, and on its own motion it will reconsider and herein GRANT the motion of defendants for summary judgment.

\*      \*      \*

In their briefs, the parties have addressed extensive argument to the question of the exhaustion of remedies. There is a dispute concerning the availability of a grievance procedure at the time of the plaintiffs' "demotion", and also a question whether the administrative hearing to which they were entitled from the Civil Service Board was timely enough to constitute any remedy at all. The court finds that not only are the facts in dispute, but the law concerning the necessity for the exhaustion of state remedies in a section 1983 case is in flux. Sometimes exhaustion is required in section 1983 cases, and sometimes it is not. *Patsy v. Florida International University*, 634 F.2d 900 (former 5th) *cert. gr., Patsy v. Florida Board of Regents*, —— U.S. ——, 102 S.Ct. 88, 70 L.Ed.2d 81 (1981). In this case determination of whether plaintiffs are barred by failure to exhaust administrative remedies need not be decided, because, as the following discussion will show, plaintiffs cannot prevail on the merits because they cannot show a legitimate entitlement to their promotions.

In order to merit due process protection, plaintiffs must show they had a valid property interest in their jobs as captains. In *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), the United States Supreme Court ruled that a non-tenured professor who challenged his dismissal from his job at the end of one year had no property interest in his job protected by procedural due process. The court ruled that in order to have a property interest, one must have a *legitimate* claim of entitlement, such entitlement springing from the terms of the appointment or grant, the loss of which is being challenged. The requirement for a legitimate claim of entitlement has not been weakened in subsequent cases, though it has been expanded somewhat. In *Perry v. Sindermann*, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972), the court wrote that a non-tenured professor who alleged that his school had a de facto tenure policy must be given a chance to show in court that there was an "understanding" to rehire him, creating an expectancy which was more than a mere subjective expectancy. The court wrote that "... we agree that the respondent must be given an opportunity to prove the *legitimacy* of his claim of such *entitlement* in light of 'the policies and practices of the institution.'" *Id.* at 603, 92 S.Ct. at 2700. (Emphasis added). In *Bishop v. Wood*, 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976), the court considered the discharge without a hearing of a policeman who alleged that the "cause" claimed for his discharge was false. The court accepted the lower court's construction of state law as meaning that the policeman had an employment at will, so that his discharge did not deprive him of any property interest. The court emphasized that the federal courts are not fora in which to review personnel decisions even though such decisions are mistaken. "In the absence of any claim that the public employer was motivated by a desire to curtail or penalize the exercise of an employee's constitutionally protected rights, we must presume that official action was regular and, if erroneous, can best be corrected in other ways. The Due Process Clause of the Fourteenth Amendment is not

a guarantee against incorrect or ill-advised personnel decisions." *Id.* at 350, 96 S.Ct. at 2080.

The rule which emerges from these and subsequent cases is that to have a property interest in a job protectable by due process, the employee must have more than an abstract desire, or need for it, or a unilateral expectation of its continuance. He must have a *legitimate* claim of entitlement to it, and for such a legitimate claim of entitlement to exist it must be traced back to an independent source such as federal, state, or local law, or contract. *Bishop v. Wood, supra.; American Federation of Government Employees AFL–CIO v. Stetson,* 640 F.2d 642 (5th Cir. 1981). To decide whether a government employee does or does not have a property interest in his job, protectable by due process, the court must look to the rules or understandings which define the terms of employment. *Ashton v. Civiletti,* 613 F.2d 923 (D.C.Cir.1980). In other words, a due process analysis does not come into play until the court first finds the existence of a legitimate property or liberty interest. *Downing v. Williams,* 624 F.2d 612 (5th Cir. 1980). However, even one without job security cannot legitimately be dismissed for constitutionally impermissible reasons. *Ferguson v. Thomas,* 430 F.2d 852 (5th Cir. 1970).

With that background, the inquiry moves to the legitimacy of plaintiff's claims of entitlement to their promotions to captain. Under Georgia law, it is certainly true that property rights are protected by the requirement for notice and a hearing; however, to determine whether such a right exists Georgia looks to the rules of the agency involved. See, for example, *Mulcay v. Murray,* 219 Ga. 747, 136 S.E.2d 129 (1964). In *Brownlee v. Williams,* 233 Ga. 548, 212 S.E.2d 359 (1975), the court found the Fulton County Civil Service Act conferred a property interest in employment such that an employee could only be terminated for cause. However, in that case there was no allegation that the terminated employee had achieved his position wrongfully. Similarly, in *Glenn v. Newman,* 614 F.2d 467 (5th Cir. 1980), the Fifth Circuit considered the case of a policeman, and found that due process protection applied where the rules allowed his suspension only "for cause"; but similarly there was no allegation in that case that he had achieved his position wrongfully. *Mulcay v. Murray, supra,* shows plainly that an action otherwise lawful is not proper if it is based on a false predicate. Specifically, the court found in that case that a fireman was wrongfully discharged because the rules of procedure were not followed. For that reason, the Commission's appointment of his successor was similarly void because there was no lawful "vacancy." 219 Ga. at 755, 136 S.E.2d 129.

The promotions here in question were governed by the promotion ordinance adopted May 7, 1975. That ordinance states in section 11–2043[2] that "All promotions of police officers to the ranks of sergeant, lieutenant and captain shall be made in accordance with the provisions of this article." After setting forth the "examination components" in section 11–2046, the ordinance moves on to section 11–2047 which states that "after all candidates for promotion have completed all examination procedures, the total score for each candidate

---

2. Plaintiffs have recently raised a claim that they were not promoted under Article C, which includes § 11–2043, delineating the examination and scoring method, but under § 11–2031 of Article B, which reads merely as follows: "The director, and other officers of the bureau shall be appointed by the commissioner to serve without any fixed term of employment and subject to the terms of these provisions and other applicable laws and regulations. They shall serve during good behavior and efficient service, to be judged by the commissioner or a designee. They may be

discharged, after trial as provided by law or regulations. (Code 1965, Sec. 25–43).
Apparently plaintiffs assert that during "good behavior and efficient service" they may be "discharged" only after trial. The court finds that § 11–2031 is merely the more general statement, and § 11–2041 *et seq.* are the more specific statements of the promotion method. § 11–2031 is by its terms "subject to the terms of these provisions and other applicable laws and regulations...." This language must be deemed to refer to § 11–2041 *et seq.*

shall be computed. All candidates who score a minimum score of 70% shall be placed on the eligibility list in descending order.... The Commissioner shall be required to fill the first vacancy from the top five (5) names on the eligibility list; the second vacancy from the top seven (7) names on the list; ...."

Plaintiffs argue here that the wording of the ordinance which states that "all candidates" scoring 70% shall be placed on the list, does not necessarily mean that "only candidates" who score 70% shall be placed on the list. They argue that it is conceivable that during some examination periods no candidates will score as much as 70%, and therefore a requirement that only candidates scoring 70% may be promoted would result in no promotions. The court finds that such a construction of the ordinance is not reasonable. Construing the subsections together, requiring that all candidates scoring 70% shall be placed on the list in descending order, and that the Commissioner shall fill the vacancies from the list in a descending manner, plainly means that those scoring less than 70% are not eligible to be on the list from which appointments are made. Moreover, the argument that a minimum score of 70% could result in there being no candidates eligible for promotion, would seem to be invalid in light of the fact that the Commissioner establishes the norm for scoring his men. Were the Commissioner to discover that no one would score 70%, he possessed the power to scale down some requirements in a uniform and appropriate way. Throughout the ordinance there are requirements that the Commissioner shall establish standards. For example, in connection with the performance evaluation "the commissioner shall develop appropriate

evaluation forms and establish written procedures for the administration and scoring of the performance evaluations that shall assure uniformity of evaluation among all candidates." Section 11–2046(4)(b). With respect to record evaluation, "the commissioner shall develop written policies for the maintenance of personnel records, including specification of appropriate job-related information to be included in the file." Section 11–2046(5). With respect to the oral interview, "the commissioner shall develop written procedures for the administration of the oral interview that insure that each interview is job-related, non-discriminatory and consistent in structure." Section 11–2046(6)(b).

■ In short, review of the ordinance leads the court to conclude that plaintiffs Whalen and Perkins, having failed to score the minimum 70% on the examination, were not authorized to have their names on the promotion list and thus the promotions they received were void from the beginning. It follows that plaintiffs Whalen and Perkins, having no property right in their promotions, cannot claim constitutional protection for them.

■ The situation with respect to plaintiff Elliott is somewhat different. Because the additional six points Elliott needed to score above 70 were given to him by the Commissioner after a recommendation by the probation system review board, his promotion has about it some flavor of authenticity. Nonetheless, defendants have succeeded on their summary judgment motion, in showing that only those officers scoring 70% or better on the exam should be promoted. The burden now shifts to Elliott,[3]

---

**3.** Were this case to go to trial, as a plaintiff in a civil rights action, Elliott would have the burden of proving that he was entitled to his promotion, that is, that the six points were properly awarded to him under pertinent police department procedures. *See, Thompson v. Bass*, 616 F.2d 1259, 1263 (5th Cir. 1980).

A case analogous to this one is *Stevens v. Hunt*, 646 F.2d 1168 (6th Cir. 1981). There, former medical students brought a civil rights suit against the university alleging that they were improperly dismissed by the dean despite

the fact that a "Progress and Promotions Committee" had recommended that the dean allow them to take a required examination for the third time. In ruling against the former students, the Sixth Circuit found that the burden was on them to establish that under governing rules and practices of the university the final word rested with the committee and not with the dean. Having failed to prove this, the former students could not prevail in their civil rights action. Similarly, in *Perry v. Sindermann, supra*, the United States Supreme Court

since he admittedly scored less than that initially, to show the existence of favorable law, or some material issue of fact which would justify the award to him by administrative fiat of an extra 6 points. Where defendants have made and supported a motion for summary judgment, Elliott has no right to withhold his evidence until trial, but must come forward with it in opposition to the motion. Rule 56(e), Fed.R.Civ.P; 10 Wright & Miller, Federal Practice & Procedure: Civil § 2739 (1973); *Menard v. Penrod Drilling Co.*, 538 F.2d 1084, 1088 (5th Cir. 1976).

The court can find nothing in this record, and Elliott points to nothing, tending to show that an injury suffered at a basketball game is a "line of duty injury" in the course of a policeman's duties, and such a proposition is by no means self-evident. The record is silent on what constitutes a line-of-duty injury. In an attempt to clarify this and other issues in the suit, and to discern on what law or facts Elliott relied, this court entered an order on April 20, 1982, which read in part as follows: "A second issue troubling the court concerns the 'line of duty' injury claimed by plaintiff Elliott * * * Plaintiff Elliott is hereby ORDERED to file with the court ... a statement identifying the following: (1) what legal authority he claims the Board possessed to award him the six points in question, and what is the source of that authority; and (2) what is a 'line of duty' injury, and what is his authority for the definition he submits." In his response, plaintiff Elliott relied upon § 11–2049(b)(4)(b) of the promotion ordinance, which states "It [the Promotion System Review Board] shall recommend appropriate action to the Commissioner, when a discrepancy is identified in su-

pervisory ratings, oral interview ratings, or record evaluations." Plaintiff Elliott's response further stated "Plaintiff Elliott explained in his letter to Commissioner Eaves the circumstance of his injury ... and enclosed a report from his doctor....[4] Commissioner Eaves, acting upon the Board's recommendation pursuant to Section 11–2049(b)(4)(b) concurred with the recommendation and officially changed plaintiff Elliott's score to 70.4.... The Board *assumed authority* to declare the injury a line-of-duty injury and made its recommendation thereupon." (Emphasis by the court.)

■ The court must assume that at least one basic reason behind a system of promotion examinations is the removal of arbitrariness and favoritism from promotions within the police department. Plaintiff Elliott's justification for his additional six points, specifically that "the Board assumed authority to declare the injury a line of duty injury," is not supported by any evidence or offer of evidence or legal authority tending to show that the Board actually had the authority that it "assumed", and such an action by the board seems particularly questionable where the injury occurred during a basketball game and happened several months before the examination in which the six points were added. The court must find on the record before it that, having been given the opportunity to raise an issue of fact on law on this point and having raised nothing but a bald assertion, Elliott, like Whalen and Perkins, must suffer summary judgment against him.

\* \* \*

considered the civil rights claim of a junior, nontenured college professor who claimed that his procedural due process rights were violated by failure to renew his contract. The professor argued that although the school had no official tenure policy, it had a "de facto tenure policy" arising from various understandings and rules operative at the school. The court ruled that the burden was on the professor to prove the existence of the de facto tenure policy.
Thus, at trial the burden would lie on plaintiff Elliott to show that the actions of the promo-

tion review board and the Commissioner in awarding him six points for a broken finger were valid under the "line of duty injury" procedures of the police department.

4. The doctor's report read merely as follows, under a date of April 7, 1975: "Mr. Elliott under treatment for fracture of lf. 4th finger. He will not be able to participate in physical fitness program until further notice."

To the extent that plaintiffs may be claiming that their promotions to captain are grounded in a contract with the city their argument is unpersuasive, because such a contract would have been ultra vires as beyond the power of the Commissioner or other official to make. Where the ordinance authorizing promotions is not adhered to, the subsequent promotions are void, because municipal officers may make contracts only by the methods prescribed by law. Ga.Code Ann. § 89–903; *City of Fort Pierce v. Scofield Engineering Co.*, 57 F.2d 1026 (5th Cir. 1932); *Mahofski v. City of Pittsburg*, 22 Pa.Cmwlth. 629, 350 A.2d 423, 426 (1976). Similarly, the mere fact that plaintiffs might have finished a "probationary period" cannot make their promotions valid if the promotion itself was based on a false predicate. *Mulcay v. Murray, supra; Mahofski v. City of Pittsburg, supra; City of Tuscaloosa v. Marcum*, 283 Ala. 440, 218 So.2d 254 (1969).

Since the promotions of plaintiffs to captain occurred in defiance of the provisions of the ordinance, it follows that plaintiffs had no right nor property interest in those promotions, and the same were not protected by the need for procedural due process. Therefore, it is of no consequence that upon the "demotion" of plaintiffs they were not provided with charges, notice, hearing, or any other due process protections which would otherwise have been required. Indeed, they were not "demoted" at all; a void promotion was recognized to have been void from the beginning.

Finally, plaintiffs raise a weak argument that their liberty interest was infringed under the Fourteenth Amendment by a demotion, which will reflect on their professional character. This is an attempt to invoke the protections set forth in *Bishop v. Wood, supra*, in which petitioner claimed he had been deprived of liberty by his discharge because the false reasons given for his discharge were so detrimental as to constitute a stigma that could damage his reputation in the community. The court found that since there was no public communication of the reasons for the discharge, no liberty interest of the petitioner had been infringed. The court noted that "a contrary evaluation of his contention would enable every discharged employee to assert a constitutional claim merely by alleging that his former supervisor made a mistake." 426 U.S. at 349, 96 S.Ct. at 2080. Similarly, in this case no allegation is made that any stigma attached to plaintiffs other than the loss of their promotions; thus, plaintiffs have failed to show the infringement of any liberty interest.

It follows that the motion of defendants for summary judgment must be GRANTED.