Ethel L. SANDERS

v.

Mark H. NUNLEY.

Civ. No. C85–1887.

United States District Court,
N.D. Georgia,
Atlanta Division.

June 25, 1985.

hibits 1 and 2.

Jerry D. Sanders, Columbus, plaintiff.

Myles E. Eastwood, Robert Tayloe Ross, Asst. U.S. Attys., Atlanta, Ga., for defendant.

## ORDER

ORINDA D. EVANS, District Judge.

This diversity action asserting personal injury claims is presently before the court on Defendant's motion for summary judgment.

Local Court Rule 220–5(b)(2) of the Northern District of Georgia provides that:

> The Respondent to a motion for summary judgment shall attach to his response a separate and concise statement of material facts, numbered separately, to which he contends there exists a genuine issue to be tried. All material facts contained in the moving party's statement which are not specifically controverted by the Respondent in his statement shall be deemed to have been admitted.

Local Rule 205–(b)(1) provides that "... the introductory portions of briefs do not constitute a statement of material facts."

In addition, Rule 56(e), F.R.Civ.P., states that:

> When a motion for summary judgment is made and supported as provided by this rule, an adverse party may not rest upon the mere allegations or denials of the pleadings, but his response, by affidavit or otherwise ... must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.

Under these rules, a respondent to a motion for summary judgment is clearly required to set out specific facts, supported by competent evidence, which show that a genuine issue of material fact remains for resolution at trial. A respondent is not entitled to simply rely on the pleadings. *Pines v. Warnaco, Inc.*, 706 F.2d 1173, 1178 (11th Cir.1983); *Whalen v. City of Atlanta*, 539 F.Supp. 1202, 1206–07 (N.D. Ga.1982). Nor do mere denials or allegations by the respondent, in the form of legal conclusions unsupported by specific facts, suffice to create issues of material fact to preclude summary judgment. *Broadway v. City of Montgomery*, 530 F.2d 657, 660 (5th Cir.1976); *Benton-Volvo-Metaive, Inc. v. Volvo Southwest, Inc.*, 479 F.2d 135, 139 (5th Cir.1973).

The Plaintiff in this case has failed to comply with these rules, by failing to submit any statement of contested material facts. Rather, the Plaintiff relies solely on her complaint and on her memorandum of law, filed in support of her response to the Defendant's motion for summary judgment, to contest the Defendant's motion. However, as the rules and cases cited above indicate, these conclusory statements do not suffice to establish the genuine issue of material fact necessary to overcome a summary judgment motion. Because the Plaintiff has failed to deny any of the material facts contained in the Defendant's statement, Local Rule 220–5(b)(1) requires that those material facts must be deemed admitted by the Plaintiff.

Thus, the following facts are deemed undisputed by the parties. On February 4, 1983, Defendant Mark H. Nunley was serving as a detective at the Navy Exchange, located on board the Naval Air Station, Pensacola, Florida. The Navy Exchange is a Non-appropriated Fund Instrumentality of the United States Navy. As a Navy Exchange Detective, Defendant Nunley's duties included detection and investigation of suspected shoplifting and other crimes against the Navy.

Nunley's credentials, authorized by the Commanding Officer of the Naval Air Station, state that he was authorized "to conduct preliminary investigations concerning theft or shoplifting of government property, and to detain any person for that purpose." Nunley has successfully arrested and prosecuted approximately 100 shoplifting cases over his nearly four years as a Detective at the Navy Exchange. He considers certain characteristics to be common to shoplifting suspects, such as baggy clothing, large purses, lingering in departments, and furtive looks by the suspect.

Of all the suspected shoplifters which Nunley has detained in his four years as a detective, only three, including the Plaintiff in this action, were found not to have the unpurchased merchandise which they were suspected to have had.

On February 4, 1983, Nunley was sitting in the Exchange's observation booth, which is approximately twenty feet above the sales floor, and is located in the center of the men's, women's and children's clothing departments, when he first noticed the Plaintiff, Ethel L. Sanders. Sanders was wearing an overcoat, baggy trousers, and was carrying a large purse. Nunley observed Sanders place a black cosmetic compact in her purse. Nunley then observed Sanders move about the garment racks and display areas. Nunley did not see the Plaintiff remove the compact from her purse at any time, nor did he see her pay for it, or for any similar item, when she was at the cashier's counter directly below where he was seated.

As the Plaintiff left the cashier's counter, Nunley followed her to Customer Service, where she made an exchange, and then left the store. Just beyond the exit, Nunley approached Sanders with his credentials and identified himself as a Navy Exchange Detective. He requested that Sanders produce her identification and accompany him to the Security Office.

Sanders entered the Security office while Nunley waited at the door until a female employee could be present. Nunley told Sanders she was suspected of shoplifting. Frank Brown, a fellow agency detective, was also present at this time. Once the female employee, Ruby Llewellen, was in the office, Nunley entered and had Sanders empty her purse and her pockets for the item, which revealed that Sanders did not have the black compact in her possession. Nunley then apologized to Sanders, and escorted her to the door.

A large sign, inside the entrance to the military area, advised all entrants to the area that "persons or vehicles entering the navy exchange complex and compound are subject to search." It is generally understood in the military community that access to the Naval Air Station facilities is conditioned upon consent to be searched at any time, and it is routine for security personnel to search persons who have entered the Naval Air Station, including the Navy Exchange.

Sanders and her husband operated a business in the Pensacola, Florida area. The Plaintiff regularly entered the Naval Air Station to shop in the Navy Exchange.

■ In support of his motion for summary judgment, Nunley argues that there remain no genuine issues of material fact for trial as to the defenses of absolute and qualified immunity. The Defendant argues that the common law torts of false arrest, false imprisonment, illegal search, intentional infliction of emotional harm and other non-constitutional torts are barred by the doctrine of absolute immunity. In addition, the Defendant argues that the Plaintiff's claims of unconstitutional detention and search are barred by the doctrine of qualified immunity. The Plaintiff argues, on the other hand, that both immunity defenses are unavailable to Nunley, as his detention and search of Sanders were outside the scope of his duties as a federal employee, were unreasonable and, further, that immunity extends only to government officials of a suitably high rank.

■ With regard to the Defendant's first argument, the court finds that the doctrine of absolute immunity bars the Plaintiff's common law tort claims. It is well-established that federal employees retain absolute immunity from liability as long as they act within the outer limits of their authority during the performance of their duties. *Evans v. Wright*, 582 F.2d 20, 22 (5th Cir. 1978); *Davenport v. Borders*, 480 F.Supp. 903, 906 (N.D.Ga.1979); *Klassy v. Weaver*, 575 F.Supp. 801, 804–05 (N.D.Ga.1982), *aff'd sub nom Klassy v. Sanders*, 721 F.2d 821 (11th Cir.1983). Furthermore, this doctrine applies equally to lower echelon employees, as governmental functions do not necessarily become less important simply because they are exercised by officers of

lower rank in the governmental hierarchy. *Peterson v. Weinberger,* 508 F.2d 45, 51 (5th Cir.1975), *quoting Barr v. Mateo,* 360 U.S. 564, 573–74, 79 S.Ct. 1335, 1340–41, 3 L.Ed.2d 1434 (1959).

In this case there is no indication that Nunley was acting outside the scope of his employment or the limits of his authority, or that he acted unreasonably, when he detained and searched the Plaintiff. Nunley's official credentials stated that his duties as Detective of the Naval Exchange included the detention, investigation and arrest of suspected shoplifters. The success of these duties required Nunley to exercise judgmental discretion "free ... of fear or threat of vexatious or ficticious suits and alleged personal liability." *Norton v. McShane,* 332 F.2d 855, 859 (5th Cir.1964). Thus, Defendant Nunley's activities as detective were absolutely shielded from common law tort liability.

■ The court is similarly persuaded that the doctrine of qualified immunity bars the Plaintiff's constitutional claims. Qualified or "good faith" immunity generally shields government officials performing discretionary functions from liability for civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 810, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); *Wilson v. Attaway,* 757 F.2d 1227, 1246 (11th Cir.1985); *Clark v. Beville,* 730 F.2d 739, 740 (11th Cir.1984). It is now well-established that the defense of qualified immunity is available to police and security officers. *Clark, supra,* at 740; *Barker v. Norman,* 651 F.2d 1107, 1120 (5th Cir. 1981). Nevertheless, the availability of immunity to security personnel is subject to the general limitations of the *Harlow* doctrine. Thus, a plaintiff can rebut a defendant's immunity by showing that the defendant lacked good faith, or acted unreasonably. *Clark, supra,* at 740; *Le Savage v. White,* 755 F.2d 814, 821 (11th Cir.1985).

■ In this case, Nunley has asserted and established his entitlement to qualified immunity. Nunley has presented solid evidence of the fact that, in detaining and searching Sanders, he was acting within the scope of his discretionary authority as Detective of the Navy Exchange. Motion for Summary Judgment, Exhibit A. Sanders has pointed to no evidence which puts this factual issue in question. Therefore, it becomes Sanders' burden to show that even though Nunley acted within the scope of his authority, he acted unreasonably or in violation of clearly-established law.

After carefully reviewing the Plaintiff's brief, we can find no facts in support of her claims that the Defendant unreasonably apprehended, searched, detained and humiliated her, or even that he detained her without probable cause. Nunley had grounds to believe that Sanders was committing a crime. According to Nunley's uncontested statement, the Plaintiff was wearing baggy clothing and carrying a large purse. And, not only did her appearance arouse his suspicion, but he actually saw her place a black compact in her purse. He did not see her pay for this compact. Based both on his past experience with the *modus operandi* of shoplifters, and on his actual observation of the Plaintiff, Nunley had probable cause to believe a crime had been committed in his presence. Furthermore, there is no evidence, other than the Plaintiff's bald assertions in the pleadings, that the Defendant used undue force or other impermissible methods in detaining and searching the Plaintiff. In short, there is no factual question as to whether a reasonable store detective, in Nunley's position, would have acted any differently than Nunley in fact acted.

The court is mindful of the fact that, ordinarily, summary judgment may be an inappropriate means of resolving a state of mind issue such as reasonableness, at least in the absence of a hearing. *See Esparola Way Corp. v. Meyerson,* 690 F.2d 827, 830–31 (11th Cir.1982). However, as the court noted in *Barker v. Norman,* 651 F.2d 1107, 1127 (5th Cir.1981):

If the plaintiff can point to *nothing* other than his own subjective belief that the

defendant intended him harm—if fails [sic] to articulate *any* objective circumstances that could serve as a rational basis from which a fact-finder could infer that the defendant acted out of malice rather than duty—then the plaintiff has not raised a triable issue of fact ... and summary judgment is proper. "[I]f there is a complete absence of probative facts to support a particular inference, or, if the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at [but one] verdict," the court may bypass the jury. [cites] (emphasis in original).

The court finds that the Plaintiff has failed to raise any triable issue of fact in this case. Accordingly, Defendant's motion for summary judgment is GRANTED.