890 F.2d 388
 51 Fair Empl.Prac.Cas. 962,
53 Fair Empl.Prac.Cas. 304,
52 Empl. Prac. Dec. P 39,504,
52 Empl. Prac. Dec. P 39,728
Guydell HORLOCK, Plaintiff-Appellee,
v.
GEORGIA DEPARTMENT OF HUMAN RESOURCES, et al., Defendants-Appellants.
 No. 88-8611.
 United States Court of Appeals,
Eleventh Circuit.
 Dec. 13, 1989.
Order on Grant of Rehearing En Banc Jan. 31, 1990.
 
 Annette M. Cowart, William F. Amideo, Atlanta, Ga., for defendants-appellants.
 A. Lee Parks, Jr., Theresa L. Kitay, Meals, Kirwan, Goger, Winter & Parks, Atlanta, Ga., for plaintiff-appellee.
 Appeal from the United States District Court for the Northern District of Georgia.
 Before COX, Circuit Judge, HILL*, and SNEED**, Senior Circuit Judges.
 HILL, Senior Circuit Judge:
 
 I. INTRODUCTION
 
 1
 Richard A. Fields and Sandra Watson, the individual defendants/appellants involved in the above-styled case, appeal the district court's denial of their motion for summary judgement on the basis of qualified immunity. As such, we review the district court's decision on the basis of the facts viewed in the light most favorable to the party against whom summary judgment was sought, the plaintiff-appellee in this case.
 
 
 2
 Since we find that no issue of material fact exists that would preclude appellants' entitlement to qualified immunity on the claim for a deprivation of property without due process, we conclude that appellants should have been granted summary judgement on this claim.
 
 A. Facts
 
 3
 Plaintiff/appellee, Guydell Horlock, is a fifty-four year old white female. Ms. Horlock has been employed by the Georgia Department of Human Resources at Georgia Regional Hospital--Atlanta ("GRHA") since 1971. Defendant/appellant Richard A. Fields, M.D., a thirty-seven year old black male, is the superintendent of GRHA. Ms. Horlock worked directly under Dr. Fields as an administrative secretary beginning in November, 1982.
 
 
 4
 In December, 1985, Fields hired defendant/appellant, Sandra Watson, a thirty-year old black female, on an emergency appointment at GRHA as an "Activity Therapist." Ms. Watson instead acted as a consultant to Dr. Fields in the contemplated managerial reorganization of the superintendent's office.
 
 
 5
 Ms. Horlock alleges that in February 1986, at about the time that Watson's ninety-day emergency appointment was to expire, Dr. Fields informed Horlock that she would "no longer be needed" in his office. Horlock was transferred to an administrative secretary's position in the Planning and Development Section of GRHA. Ms. Horlock makes no claim that her new position, which she currently holds, carried with it a loss of salary or demotion of any kind.
 
 
 6
 In February, 1986, at the time that Horlock was being transferred, Dr. Fields proposed to create and fill a purportedly new position in his office for an administrative "assistant." Ms. Horlock alleges and regards as crucial to her case the fact that the administrative "assistant" position is fundamentally the same as that of her former administrative "secretary" position, with some of the more clerical tasks replaced by a duty to represent the superintendent at specified functions. Horlock maintains that Dr. Fields created this "new in name only" position for Ms. Watson because Watson is a young black female. Horlock contends that she was removed from her former position to make way for Watson.
 
 
 7
 Due to evidence of non-compliance by Dr. Fields with Georgia State Merit System procedures for staffing a new position, his first attempt to fill the administrative assistant position with his alleged pre-selected candidate, Watson, was nullified; the position was thereafter posted for interested applicants. On his second attempt to fill the post, Fields added the requirement of a master's degree and/or six years of hospital administration experience as prerequisites to applying for the job. Watson and Horlock were the only candidates who applied.
 
 
 8
 Watson outscored Horlock on a written test and an oral interview before a committee of three hospital employees. These tests were designed by Dr. Fields; Horlock disputes the validity of the procedure. Horlock alleges that she received a rejection letter from Dr. Fields on the same day she was interviewed, and that evidence demonstrates that Fields rejected Horlock even before he consulted with the screening committee. Watson received the permanent appointment as administrative assistant in June, 1986.
 
 
 9
 On July 8, 1986, Ms. Horlock initiated an internal complaint of discrimination regarding the selection process. On July 15, 1986, that complaint ripened into a charge filed with the Georgia Office of Fair Employment Practices.
 
 
 10
 On July 10, 1986, Ms. Horlock's employment supervision was transferred by Dr. Fields from himself to Ms. Watson. Watson later issued Horlock a Report of Performance with the lowest score Horlock had received in her fifteen years as a state employee. Watson cited Horlock's attitude problems, including her hostile and resistant demeanor.
 
 
 11
 Horlock then filed her second administrative charge, alleging retaliation. In early August, 1986, the Georgia Office of Fair Employment Practices determined that there was just cause for finding retaliation by Fields and Watson.
 
 B. Procedural History
 
 12
 On April 14, 1987, Horlock filed this action in federal court in the Northern District of Georgia and asserted causes of action under Title VII; the Age Discrimination in Employment Act ("ADEA"); 42 U.S.C. Secs. 1981 and 1983, and the Fourteenth Amendment. Horlock alleged unlawful discrimination in employment on the basis of race and age, claimed that the defendants retaliated against her after she filed charges of discrimination, and asserted that defendants denied her due process by depriving her of a protected property interest in a wholly arbitrary and capricious manner. She requested various forms of equitable and legal relief, including awards of compensatory and punitive damages.
 
 
 13
 In November, 1987, all defendants moved for summary judgment, arguing that Horlock failed to state a claim upon which relief could be granted as to each of the asserted causes of action; and that, even if plaintiff had alleged sufficient facts to state any of the claims, defendants Fields and Watson were entitled to qualified immunity from damages because defendants' actions allegedly did not violate any "clearly established" right of plaintiff, as required in order to avoid the qualified immunity of public officials to such suits.
 
 
 14
 On February 29, 1988, a magistrate issued his report and recommendation that defendants' motion be denied in all respects. Defendants objected to the magistrate's report in only two respects. First, they asserted that the magistrate erred in denying them summary judgment on Horlock's due process claim under section 1983 because plaintiff failed to show the existence of a property interest in the position of administrative assistant. The defendants also challenged the magistrate's conclusion that Fields and Watson are not entitled to qualified immunity.
 
 
 15
 The district court considered the defendants' objections and on July 1, 1988, denied defendants' motion for summary judgment and adopted the magistrate's report and recommendation on both issues. Concerning defendants' first objection, the court agreed that Horlock needed to have a property right in the administrative assistant position in order to allege an unconstitutional deprivation of due process. The court declared that summary judgment was inappropriate, however, because a material factual issue existed regarding whether the administrative "assistant" position was a new position or differed only in name from Horlock's former administrative "secretary" position.
 
 
 16
 The district court's order intimated that Horlock had a property interest "in a job she had held for over six years," and stated that "deprivation of a property interest for an improper motive and by pretextual means is a substantive due process violation." Regarding the qualified immunity issue, the court cited the magistrate's report with approval:
 
 
 17
 Plaintiff alleges defendants denied her right to be free from discrimination in employment on the basis of race and age, the right to protest unlawful employment practices of the defendants, and the right not to be deprived of a protected property interest without due process of law. These are fundamental rights which have been established through the Title VII, ADEA, and the Civil Rights statutes which defendants should have been aware of. None of these statutes are of recent enactment.
 
 
 18
 The order, insofar as it denied summary judgment on the issue of whether Horlock was deprived of a property interest as required to state a section 1983 due process claim, was not a final judgment of the district court directly appealable to this court. The district court amended its order so that defendants could apply for leave to appeal from the interlocutory order. On November 30, 1988, this court denied defendants' petition for discretionary appeal under 28 U.S.C. Sec. 1292. The individual defendants now appeal from the denial of summary judgement on the ground of qualified immunity.
 
 II. DISCUSSION
 
 19
 We begin by reviewing the procedural and jurisdictional context of this case. Appellants contend that the district court erred in refusing to grant their motion for summary judgment based upon qualified immunity of Fields and Watson to the section 1983 due process claim. At issue is a small slice of the case at large. Only the individual defendants, Fields and Watson, are involved: qualified immunity does not apply to the Georgia Department of Human Resources and its agency, the Georgia Regional Hospital-Atlanta. Whether appellee stated causes of action under the ADEA, Title VII, section 1981, and section 1983 is not at issue. Only the qualified immunity issue as it relates to appellee's due process claim brought under section 1983 is before us.
 
 
 20
 The district court's denial of summary judgment to Dr. Fields and Ms. Watson on the basis of their qualified immunity from the Sec. 1983 due process claim is a final order of the district court and thus appealable as of right to this court under 28 U.S.C. Sec. 1291.
 
 
 21
 A. Appellate Jurisdiction Over Qualified Immunity Claims.
 
 
 22
 The qualified immunity determination " '... falls within that "small class [of decisions] which finally determine claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated." ' " Rich v. Dollar, 841 F.2d 1558, 1560 (11th Cir.1988), quoting Mitchell v. Forsyth, 472 U.S. 511, 524-25, 105 S.Ct. 2806, 2814-15, 86 L.Ed.2d 411 (1985), in turn quoting Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541, 546, 69 S.Ct. 1221, 1225-26, 93 L.Ed. 1528 (1949).
 
 
 23
 The denial of defendants' claim for qualified immunity in this case turned on an issue of law since "[t]he district court's determination that a genuine issue of material fact precluded it from granting summary judgment for appellant based on his claims of immunity is itself a question of law." So long as substantial factual development has occurred,[1] factual disputes do not affect qualified immunity analysis since "that analysis assumes the validity of the plaintiff's version of the facts and then examines whether those facts 'support a claim of violation of clearly established law.' " Goddard v. Urrea, 847 F.2d 765, 769 (11th Cir.1988) (Johnson, dissenting). See Mitchell, 472 U.S. at 527-28, 105 S.Ct. at 2816 ("issue is a purely legal one: whether the facts alleged ... by the plaintiff ... support a claim of violation of clearly established law"); see also, Rich, 841 F.2d at 530 (same). This principle rests on the rationale that the asserted immunity is an immunity not merely from ultimate liability--it protects public officials from having to stand trial at all. Id.
 
 
 24
 The district court in this case determined there to be a genuine issue of fact whether the position allegedly created for Ms. Watson was the same as the position previously held by Ms. Horlock. If not, the court implied, then Ms. Horlock would not have a property interest in the new position and Dr. Fields' actions, while possibly a violation of Title VII and/or the ADEA, would not be a violation of a clearly established right to be free from the arbitrary and capricious deprivation of a property right.
 
 
 25
 If plaintiff could prove at trial that the new administrative "assistant" position is the same as the administrative "secretary" position--the district court implicitly held and appellee argues in this court--the defendants' actions (as alleged by plaintiff) would constitute a violation of clearly established rights; thus the defendants would not be entitled to immunity.
 
 
 26
 We are therefore faced with a purely legal determination of whether the district court's analysis is correct.[2] Accordingly, we turn our attention to the merits of the immunity claim.
 
 
 27
 B. Qualified Immunity Analysis.
 
 
 28
 Under the Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982) qualified immunity test, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person should have known."
 
 
 29
 Zeigler v. Jackson, 716 F.2d 847 (11th Cir.1983) sets forth the two-part allocation of proof to be administered by courts of this circuit when applying the Harlow objective reasonableness test. First, the defendant public official must demonstrate that he was acting within the scope of his discretionary authority. Id. at 849. There seems to be no dispute in this case that defendants Fields and Watson satisfy this requirement for gaining qualified immunity.
 
 
 30
 After the defendant public official satisfies this burden, the plaintiff must show that the defendant lacked good faith in taking the discretionary actions. The plaintiff satisfies this burden through proof demonstrating that the defendants "violated clearly established constitutional law." Id.
 
 
 31
 As explained in Rich v. Dollar, 841 F.2d 1558, 1564 (11th Cir.1988), Mitchell v. Forsyth, 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985) teaches that there are
 
 
 32
 two questions of law that we must decide in completing the second step of the Zeigler analysis: ascertainment of the law that was clearly established at the time of the defendant's action, and a determination as to the existence of a genuine issue of fact as to whether the defendant engaged in conduct violative of the rights established by that clearly-established law.[3]
 
 
 33
 These determinations go to questions of law that are subject to de novo review by this court. Rich, 841 F.2d at 1563.
 
 
 34
 In establishing whether the facts viewed in the light most favorable to the plaintiff support a finding that Dr. Fields and Ms. Watson violated "clearly established" rights, we must define the appropriate legal norms. In order to assert a valid claim for the deprivation of due process, a plaintiff must show (1) that the defendant acted under color of state law,[4] (2) and deprived the plaintiff, (3) of life, liberty,[5] or a property interest, (4) in a manner that is "without due process." Parratt v. Taylor, 451 U.S. 527, 536-37, 101 S.Ct. 1908, 1913-14, 68 L.Ed.2d 420 (1981).
 
 
 35
 In determining whether the plaintiff has asserted the deprivation of a "clearly established right" for the purpose of qualified immunity analysis, the Supreme Court in Anderson v. Creighton, 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987), has stated that "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates the right." It is insufficient, therefore, for the plaintiff merely to claim that the Fourteenth Amendment (and section 1983) provides appellee with a "clearly established right" to "due process of law" which the defendants should have been aware. The test of "clearly established law" must be applied at a level such that a reasonable public official would understand that the specific action he is taking violates the law. Id., 107 S.Ct. at 3039.
 
 
 36
 We agree with the district court that if, as alleged by the plaintiff-appellee, the defendants' actions were pretextual and motivated by discrimination on the basis of age and race, those actions were taken "without due process." But, as explained supra, this is only one element of a valid due process claim.
 
 
 37
 Plaintiff must demonstrate that she was deprived of a property interest when she was transferred from her administrative secretary position in the Superintendent's Office at GRHA to an administrative secretary position in the Planning and Development Office at GRHA. See Hearn v. City of Gainesville, 688 F.2d 1328, 1332 (11th Cir.1982), citing Bishop v. Wood, 426 U.S. 341, 343-47, 96 S.Ct. 2074, 2076-79, 48 L.Ed.2d 684 (1976).
 
 
 38
 The district court correctly found that if the administrative assistant position was newly created and not merely the secretary position by a contrived name, Ms. Horlock was not deprived of a property interest: the law does not recognize a property interest in a mere expectation. Board of Regents v. Roth, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972).
 
 
 39
 The district court erred, however, in finding that if the administrative "assistant" position is the same as the administrative "secretary" position and Dr. Fields simply transferred Ms. Horlock for discriminatory reasons in order to place Ms. Watson in that same position, Ms. Horlock was, without more, deprived of a "clearly established" right. The district court mistakenly focused on the alleged misconduct undertaken by the defendants, rather than on Ms. Horlock's actual loss.
 
 
 40
 It is undisputed that Ms. Horlock still retains her Merit System job classification at GRHA. Nor does plaintiff-appellee claim that she was suspended without pay, demoted, or subjected to a reduction in salary.[6] In essence, appellee claims that although she has the same job classification, carries out the same duties, and receives the same pay, she has lost the opportunity to work in one section of GRHA rather than the other and has thereby been deprived of a property interest.
 
 
 41
 The existence of a property interest is determined by reference to state law. Bishop, 426 U.S. at 344, 96 S.Ct. at 2077; Whalen v. City of Atlanta, 539 F.Supp. 1202, 1205 (N.D.Ga.1982). Under Georgia law, an employee does not have a property interest in a particular position within the employing organization. See Clark v. State Personnel Board, 252 Ga. 548, 550, 314 S.E.2d 658 (1984). More specifically, unless the aggrieved employee has suffered a dismissal from employment, demotion, disciplinary reduction in salary, or suspension without pay, she has not suffered an "adverse action" nor been deprived of any property interest. See Horne v. Skelton, 152 Ga.App. 654, 658, 263 S.E.2d 528 (1979), citing Sec. 15.101 of the Rules and Regulations of the [Georgia] State Merit System of Personnel Administration.
 
 
 42
 We need not make a definitive determination, however, as to whether under Georgia law and the facts of this case, such a lateral transfer deprived Ms. Horlock of a property interest. Under the Supreme Court's qualified immunity jurisprudence, as expressed in Harlow, Mitchell, Anderson, and interpreted by this court in Rich, our role is confined to determining whether the right asserted was "clearly established" at the time it was alleged to have been violated.[7] In the context of this case, this requires the plaintiff-appellee to demonstrate the deprivation of a "clearly established" property interest. We are satisfied that the appellee has not carried this burden.[8]III. CONCLUSION
 
 
 43
 Even if, as Ms. Horlock alleges, the defendant public officials transferred her without due process and did not create a truly "new" position to which Ms. Horlock had no property interest, the defendants did not violate a "clearly established right" and thus were entitled to qualified immunity on the section 1983 due process claim.
 
 
 44
 The decision of the district court is REVERSED. The case is REMANDED to the district court with instructions to grant defendants' motion for summary judgment on the basis of their qualified immunity to the section 1983 due process claim.
 
 ORDER
 
 45
 Before TJOFLAT, Chief Judge, FAY, KRAVITCH, JOHNSON, HATCHETT, ANDERSON, CLARK, EDMONDSON and COX, Circuit Judges.***
 
 BY THE COURT:
 
 46
 A majority of the judges in active service on the court's own motion having determined to have this case reheard en banc.
 
 
 47
 IT IS ORDERED that the above cause shall be reheard by this court en banc without oral argument during the week of June 11, 1990, on a date hereafter to be fixed. The clerk will specify a briefing schedule for the filing of en banc briefs. The previous panel's opinion is hereby VACATED.
 
 
 
 *
 See Rule 34-2(b), Rules of the U.S. Court of Appeals for the Eleventh Circuit
 
 
 **
 Honorable Joseph T. Sneed, Senior U.S. Circuit Judge for the Ninth Circuit, sitting by designation
 
 
 [1]
 In Riley v. Wainwright, 810 F.2d 1006 (11th Cir.1987), the district court denied the qualified immunity claim because it determined that "substantial [additional] factual development" was needed before that court could adequately assess the qualified immunity claim. See Goddard v. Urrea, 847 F.2d 765, 769 (11th Cir.1988) (dismissing an appeal on this ground, citing Riley ). But see, Goddard, 847 F.2d at 769 (Johnson, dissenting) (arguing that Riley was distinguishable and that appellate court should have assumed facts as alleged by plaintiff and decided immunity issue)
 In this case, the district court decided as a matter of law that the material factual dispute over whether the "secretary" and "assistant" positions were the same precluded it from granting summary judgment. The district court did not find, as did the court in Riley, that general factual development was necessary for a proper evaluation of the immunity defense. See Rich, 841 F.2d at 1561 n. 1 (distinguishing Riley on this ground).
 
 
 [2]
 As is readily apparent from the discussion in the text, under the facts of this case the qualified immunity question turns squarely on whether Ms. Horlock had a property interest in her assignment as an administrative secretary in the Superintendent's Office at GRHA, rather than as an administrative secretary in the Development Section at GRHA. Appellee is therefore entirely correct to argue that appellants are attempting in this appeal to raise the very same property interest issue that we declined to evaluate on appellants' petition for discretionary review under 28 U.S.C. Sec. 1292. (There, appellants asserted that the lack of a property interest meant that the appellee failed to state a section 1983 due process violation.)
 Appellee is entirely incorrect, however, to conclude from the re-emergence of an issue that we declined to take up on discretionary appeal that we should or could decline to give that issue its due consideration when presented in a nondiscretionary appeal. As discussed in the text, appellants are entitled to have this court decide whether the district court correctly interpreted the law of qualified immunity as applied to the facts alleged by the plaintiff-appellee. If the property interest issue is crucial to our determination of whether defendants are entitled to qualified immunity--and appellee has not argued to the contrary--we must evaluate that question regardless of whether the same matter was presented on the merits of a discretionary appeal that we declined to hear.
 In essence, appellants came to this court the first time with no "ticket" to enter the "dance hall." We declined to let appellants "in" for free. Now that appellants have presented the appropriate "ticket," it matters not in the least that they have chosen to perform the same "dance." Cf. Godbold, Twenty Pages and Twenty Minutes--Effective Advocacy on Appeal, 30 Sw.L.J. 801, 805 (1976) (analogizing elements of appellate jurisdiction to "tickets" for review.)
 
 
 [3]
 See Mitchell, 472 U.S. at 528, 105 S.Ct. at 2816-17 (appellate court must determine whether legal norms allegedly violated were established at time of challenged actions); and Id. at 526, 105 S.Ct. at 2815-6 (plaintiff must uncover through discovery sufficient evidence to create genuine issue of whether defendant committed alleged acts)
 
 
 [4]
 Appellants concede that their actions were taken under color of state law. Appellant's Brief at 14
 
 
 [5]
 Plaintiff-appellee makes no claim that she was deprived of a life or liberty interest
 
 
 [6]
 Appellee did make passing reference in the statement of facts in her brief that she was not granted an annual merit increase in salary due to the low score she received from Ms. Watson on the Report of Performance. However, appellee did not argue that this amounted to a property interest; nor do we find it to be a property interest since it appears to be a mere expectation. See, Board of Regents v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972)
 
 
 [7]
 See, e.g., Mitchell, 472 U.S. at 528, 105 S.Ct. at 2816-17 (appellate court need not determine whether plaintiff's allegations actually state a claim; need only determine whether legal norms allegedly violated were clearly established)
 
 
 [8]
 As we sought to make clear in our discussion of the procedural aspects of this case, our decision today affects only a small portion of this case--the section 1983 due process claim asserted against the individual defendants
 Drawing upon the magistrate's report, the district court made the following assessment of general complexion of this case:
 The magistrate aptly summarized the nature of this case: Plaintiff alleges defendants denied her her right to be free from discrimination in employment on the basis of race and age, the right to protest unlawful employment practices of the defendants, and the right not to be deprived of a protected property interest without due process of law. These are fundamental rights which have been established through the Title VII, ADEA, and the Civil Rights statutes which defendants should have been aware of. None of these statutes are of recent enactment.
 With the exception of the implicit assumption in this passage that misconduct violative of statutory and constitutional norms automatically leads to the deprivation of a property interest, we agree with the above assessment of the case. The lack of a "deprived property interest" does not make the alleged misconduct somehow proper or lawful. As the above statement makes clear, other rights and remedies may be available to Ms. Horlock.
 
 
 ***
 Senior U.S. Circuit Judge James C. Hill has elected to participate in further proceedings in this matter pursuant to 28 U.S.C. Sec. 46(c)